# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **JOHN DOE** by and through his next friend, **MARY DOE**, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No.: _____<br>)<br>) |
| **STEVE SMITH, JAMES BLANCHARD, BRYSON INGRAM, J.C., B.F.,** and **PIEDMONT CITY SCHOOL DISTRICT** | )<br>)<br>)<br>) |
| Defendants. | ) |

## COMPLAINT

COMES NOW, Plaintiff John Doe, a minor, by and through his mother Mary Doe, and files this complaint against Steve Smith, James Blanchard, Bryson Ingram, J.C., B.F., and the Piedmont City School District, and, in support, states as follows:

### INTRODUCTION

In 2006, at 35 years old, Steve Smith became the Athletic Director and Head Coach for Piedmont High School. James Blanchard is Smith's Defensive Coordinator. Their program has won four 3A state championships and has had five undefeated seasons. To foster discipline, Smith implemented the Senior Rule whereby all players on the football team have to obey every order given them by a senior. At some point, the Piedmont football team started the practice of "keying" (forcing a car or truck key into a player's anus) as a means for Senior team members to discipline other players. Despite knowledge of the practice, Smith and Blanchard did nothing to stop it.

Bryson Ingram was an outstanding player and Senior on the football team. He had a long history of disruptive, misogynistic and aggressive behavior. However, despite this extensive history of discipline problems, Bryson was never expelled. Instead, he continued to start on the

football team and was sent to in school suspension repeatedly. It is worth noting that Bryson's father, Michael Ingram, was the President of the Piedmont City School Board prior to his resignation and is still the Pastor of the Piedmont First Baptist Church; where Coach Smith attends.

On the afternoon December 2, 2019, the then 14-year-old John Doe (a 5'4" 8th grader, weighing 120 lbs.) left Piedmont Middle School and went to practice in the high school football team's field house. He had missed practice the week earlier. Smith told the defense to stay in the locker room while he, Blanchard, and all the other coaches went into the film room, several rooms away from the locker room, and closed the door behind them.

While John Doe was getting ready, J.C. (a 6' Junior, weighing 265 lbs.) grabbed him around the chest, and B.F. (a 5'10" Sophomore, weighing 155 lbs.) grabbed his ankles. John Doe started to yell, but he realized that there would be no point as there were no coaches around to hear him. While 25-30 of his teammates watched, including Smith's son, Bryson Ingram (a 6" Senior, weighing 270 lbs.) grabbed John Doe's knees and separated them He then took a car key and stabbed it through John Doe's underwear and inserted the metal part of the key into John Doe's anus. Ingram turned the key two full turns and told him "Don't miss practice again."

Making sure to follow the Senior Rule, not one player said anything about the three boys raping their teammate with a car key or did anything to stop it. Smith and Blanchard were not present while John Doe was 'keyed'; they were too busy watching game film.

John Doe was upset about the rape but, due to extreme shame and embarrassment, did not tell his mother or any teachers about what happened. The following Tuesday in the field house, the players were talking loudly about John Doe having been 'keyed' while Blanchard was in the room and heard them. He did not do anything or say anything in response.

Several months later, around July 31, 2020, John Doe was a Freshman at Piedmont High and playing for Smith and Blanchard on the football team. When he passed out due to heat exhaustion, Smith called him "stupid," ordered John Doe off the practice field, and told him not to come back. Around August 21, 2020, the first few days of school, B.F. told John Doe in the hallway "you quit on us, next time we'll key you three times."

The following day, John Doe missed school. The day after, John Doe again skipped school and attempted suicide. When the police responded, John Doe revealed to them that Bryson Ingram, B.F., and J.C. raped him with a key and that B.F. had threatened to do it again.

In September 2020, Bryson Ingram, J.C. and B.F. were charged with misdemeanor third-degree assault as a result of raping John Doe with a key. Ingram pled delinquent to a youthful offender offense but otherwise suffered no consequences. B.F. was transferred to an alternative school. Despite the charges pending against him, J.C. finished out 2020 as a starter on the Piedmont High football team under Smith and Blanchard.

John Doe has not attended school since his attempted suicide and is now homeschooled.

## PARTIES

1. John Doe is under the age of nineteen (19) years and is a resident of Calhoun County, Alabama. John Doe was a minor at the time the actions set out in the Complaint occurred.

2. Mary Doe is mother and next friend of minor Plaintiff, John Doe. Mary Doe is above the age of nineteen (19) years and is a resident of Calhoun County, Alabama.

3. Steve Smith, upon present information and belief, is above the age of nineteen (19) and a resident of Calhoun County, Alabama.

4. James Blanchard, upon present information and belief, is above the age of nineteen (19) and a resident of Cherokee County, Alabama.

5. Bryson Ingram, upon present information and belief, is above the age of nineteen (19) and a resident of Calhoun County, Alabama.

6. J.C., upon present information and belief, is a minor and a resident of Calhoun County, Alabama.

7. B.F., upon present information and belief, is a minor and a resident of Calhoun County, Alabama.

8. Bryson Ingram, J.C., and B.F. hereinafter collectively referred to as "Student Defendants."

9. Piedmont City School District is an entity doing business as Piedmont City Schools in Calhoun County, Alabama.

## JURISDICTION AND VENUE

10. This action is filed pursuant to 42 U.S.C. §§ 1983 and 20 U.S.C. §§ 1681 seeking redress of injuries suffered by Plaintiff John Doe from deprivation under color of state law, of rights secured by the FOURTEENTH AMENDMENT to the UNITED STATES CONSTITUTION. This action also claims violations of Alabama State law. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

11. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over the Alabama state law claims since these claims are so related to the claims in the § 1983 civil rights action that they form part of the same case and controversy.

12. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and other applicable law because the cause of action arose in Calhoun County, Alabama, which is situated within the district and divisional boundaries of the Northern District of Alabama.

13. All conditions precedent to the filing of the instant Complaint has been satisfied.

## FACTS

14. Paragraphs 1 through 13 are incorporated herein as if set out in full.

### The Piedmont Football Program

15. Piedmont Middle School and Piedmont High School are governed by the Piedmont City School District through its principals; it receives federal funds for the education and welfare of its students.

16. Steve Smith is the Head Football Coach and Athletic Director at Piedmont High School. He is directly responsible for protecting, supervising, disciplining students and players at Piedmont High School, including Plaintiff John Doe and the Student Defendants. At all times relevant hereto, Smith acted under color of state authority.

17. James Blanchard is a physical education teacher and the Defensive Coordinator at Piedmont High School. He is directly responsible for protecting, supervising, disciplining students and players, including Plaintiff John Doe and the Student Defendants. At all times relevant hereto, Blanchard acted under color of state authority.

18. Bryson Ingram's father, Michael Ingram, was the President of the Piedmont City School Board and Pastor of the Piedmont First Baptist Church; the church Smith attends.

19. Bryson Ingram had a long history of aggressive, unruly, and violent behavior while attending the Piedmont City Schools. Smith and his father knew of this extensive history of bad behavior, but, despite the danger presented to the other students, Ingram was never expelled. Instead he was sent to in school suspension (ISS) repeatedly and continued to start for the team.

20. Plaintiff John Doe personally observed how much Defendant Bryson spent in ISS due to behavioral problems, because he was regularly sent to serve ISS at the middle school where John Doe saw him in the hallway.

21. The practice of 'keying' players (forcing a car or truck key into a player's anus) as a means for team members to discipline other their teammates has been around for some time in the Piedmont High School football program.

22. No one knows exactly when it started or how many players have been 'keyed,' but it has been around long enough (years) and often enough (at least once per year) for the coaches, including Smith and Blanchard, to know of it and, if they had desired, put a stop to it.

23. Despite their knowledge of the practice, Smith and Blanchard did nothing.

24. At some point, Smith, as the head Football Coach and Athletic Director, had implemented, acquiesced, fostered, and/or encouraged a rule whereby all players on the football team had to obey every order given them by any senior (the "Senior Rule.") Blanchard knew of the Senior Rule and actively encouraged players to abide by it.

25. Through the Senior Rule, Smith, and by extension Blanchard, placed an enormous amount of power over those younger players in all Seniors; including Bryson Ingram, a boy with a long history of disruptive, misogynistic, and aggressive behavior who had experienced few consequences as a result of his actions.

26. Smith and Blanchard's actions (in implementing and encouraging the Senior Rule), and more particularly their inactions (in failing to stop the 'keying' practice), had direct and devastating consequences for Plaintiff John Doe

### John Doe Joins the Piedmont Football Program

27. Plaintiff John Doe was a student in his 8th grade year at Piedmont Middle School in Calhoun County, Alabama in December of 2019.

28. At the time of this incident Plaintiff John Doe was 14 years old, was 5 feet 4 inches, and weighed approximately 120 pounds.

29. At the time of the incident of this matter, Bryson Ingram, was 18 years old, a Senior at Piedmont High School, and a starter on the football team. He was 6' tall and weighed approximately 270 lbs.

30. At the time of the incident of this matter, Defendant J.C. was approximately 16 years old and a Junior at Piedmont High School. He was also a starter on the football team standing 6' tall and weighed approximately 265 lbs.

31. At the time of the incident of this matter, Defendant B.F. was as approximately 15 years old and a Sophomore at Piedmont High School. A sub-par player of average height, he was 5'10" tall and weighed approximately 155 lbs.

32. In or around, November 2019, John Doe was on the football team with his school. Once the middle school season was over, his team would dress out and sit on the sidelines of the Piedmont High School team games.

33. Prior to the incident made the basis of this matter, Ingram and the other Student Defendants called John Doe derogatory names such as "butt rim."

34. On or about August 2019, while they were by the football field Bryson Ingram, was talking to small group of kids, including Plaintiff John Doe, and threatened them that they were going to "key one of y'all" if anyone broke any rules.

### Ingram, B.F. and J.C. Rape John Doe with a Key
### While Smith and Blanchard Watch Game Film

35. On the afternoon December 2, 2019, John Doe left Piedmont Middle School and went to the High School on a bus. He had missed practice the previous week.

36. Upon arrival at the school, around 3:00 pm, John Doe went to the field house. Smith told the offense team to get ready and told the defense to stay in the locker room.

37. Smith, Blanchard, and all the other coaches left the players and went into the film

room, several rooms away from the locker room, turned up a game film video loudly, and closed the door behind them. This left the students without any supervision and John Doe unprotected.

38. While John Doe was getting ready, B.F. and J.C. grabbed him while he was putting on his gear; his jogging pants were around his ankles.

39. J.C. grabbed John Doe around the chest and B.F. grabbed his ankles.

40. John Doe tried to fight the Student Defendants, but there were three of them, and they were all older and much larger. He started to yell, but he realized that there would be no point as there were no coaches around to hear him.

41. While 25-30 of his teammates watched, including Coach Smith's then 16 year old son, Bryson Ingram grabbed John Doe's knees and separated them. He then took a car key and stabbed it through John Doe's underwear and inserted the metal part of the key into John Doe's anus. Ingram then turned the key two full turns before telling John Doe "Don't miss practice again."

42. John Doe would have been able to stop Ingram from raping him with the key if J.C. and B.F. had not been holding him.

43. Not one player said anything to the Student Defendants about raping their teammate with a key. Not one player did anything to stop it. They were following the Senior Rule.

44. No teachers or adults present while this horrible incident happened to John Doe; they were too busy watching game film.

### The Aftermath

45. The following Tuesday at school, all the players were talking about it while Blanchard, the weight training coach, was in the room and heard them. He did nothing in response and said nothing to John Doe or anyone in response.

46. John Doe was upset about the rape but, due to extreme shame and embarrassment, did not tell his mother or any teachers about what happened.

47. In or around July 31, 2020, John Doe passed out during practice. In response, Smith called him "stupid" and ordered him off the practice field and told him not to come back.

48. On August 19, 2020, the first day of school, John Doe went to the gym to work out for basketball; Smith again ordered him out. Two days later, B.F. told John Doe in the hallway of the school during school hours, "you quit on us, next time we'll key you three times."

49. The following day, John Doe missed school. The day after, John Doe again skipped school and attempted suicide.

50. Following the attempted suicide, John Doe revealed to the police that Bryson Ingram, B.F., and J.C. raped him with a key and that B.F. had threatened to do it again.

51. J.C. was charged with a misdemeanor. He finished out his 2020 season as a starter on the Piedmont High School football team under Smith and Blanchard. He suffered no consequences as a result of his participation in John Doe's rape.

52. B.F. was charged with a misdemeanor and transferred to an alternative school.

53. Defendant Ingram was charged with a misdemeanor. He pled delinquent to a youthful offender offense but otherwise suffered no consequences for raping John Doe with a key.

54. John Doe has not attended school since his attempted suicide and is now homeschooled.

55. The Student Defendants' harassing, intimidating and aggressive behavior was well known or should have been well known to Smith and Blanchard. They did nothing.

56. Blanchard overheard what happened to John Doe and yet did nothing, even though he was required by the Piedmont Personnel Manual to report all incidents of harassment, including

sexual in nature, to the school principal.

57. Smith's failure to supervise his players in any real respect, leaving them unsupervised in the locker room, violated the Piedmont School Board's own policies and procedures regarding supervision of students and protecting students from harassment, intimidation and sexual assault.

58. Specifically, Smith and Blanchard did not comply with Policy 5.1.1 (e) of the Piedmont City School Board Personnel Policy Manual that requires employees to "provide effective supervision, discipline, organization, and instruction of students."

59. Smith and Blanchard knew of and actively encouraged use of the Senior Rule whereby Senior players could discipline and direct their teammates without fear of reprisal.

60. More specifically, Smith and Blanchard knew of the practice whereby football players would discipline their teammates by 'keying' them, but did nothing to stop it; thereby ratifying the practice.

61. Plaintiff John Doe's physical injuries and current poor mental condition has been directly caused and/or exacerbated by a systematic failure of Smith and Blanchard to supervise, discipline, suspend and expel students who pose a real and immediate danger to their fellow students.

62. Plaintiff John Doe's physical injuries and current mental condition has been directly caused and/or exacerbated by the assault inflicted upon him by the Student Defendants.

63. Since the assault and negligence taken collectively by Defendants, Plaintiff John Doe has suffered emotionally due to traumatic events no person should ever have to endure.

**CAUSES OF ACTION**

**Count 1 – 20 U.S.C. § 1681, *et. seq.***
**[Violation of TITLE IX]**

64.     Paragraphs 1 through 63 are incorporated herein as if set out in full.

65.     TITLE IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C § 1681(a).

66.     TITLE IX liability arises when a school district official is an appropriate person with the authority to take corrective measures in response to sufficient, actual notice of student on-student sexual harassment responds thereto with deliberate indifference and unreasonably in light of the known circumstances.

67.     As alleged *supra*, the Piedmont City School District was on actual notice of the Student Defendants' habit and practice of continuously and repeatedly harassing and sexually assaulting students through the knowledge of Defendants Smith and Blanchard and a member of the Piedmont School Board, Michael Ingram.

68.     Student Defendants' sexual harassment of their fellow students was obvious, flagrant, rampant and of a continuous duration.

69.     Smith, Blanchard, and Defendant Piedmont City School District had the authority to initiate corrective action in response to Student Defendants' sexual harassment, intimidation and assault of their fellow students or place other restrictions on Student Defendants.

70.     Soon after it occurred, Defendant Blanchard had actual knowledge that John Doe was raped with a key, yet did nothing even though he was obligated under school policy to report that misconduct to the school principal.

71.     Defendant Piedmont City School District, through the knowledge and inaction of

Smith and Blanchard, together with Michael Ingram, acted with deliberate indifference to their sufficient, actual notice of the Student Defendants' sexual harassment, intimidation and assault of fellow students.

72. Plaintiff John Doe has been homeschooled as a result of this incident, since J.C., one of his assailants, has been allowed to return to the school and even play football. Plaintiff John Doe can no longer play any school sports that he played before this incident.

73. As a direct and proximate result of Piedmont City School District's deliberate indifference, Plaintiff was sexually assaulted which caused personal injury and severe emotional distress, attempted to commit suicide, and has been denied educational opportunities and access.

### Count II – 42 U.S.C. § 1983
### [Violation of Amendments to the U.S. CONSTITUTION]
### (Defendant Steve Smith)

74. Paragraphs 1 through 63 are incorporated herein as if set out in full.

75. Defendant Smith, individually and with final decision-making authority on behalf of the Piedmont City School District, violated Plaintiff's rights under 42 U.S.C. §1983 and his FOURTEENTH AMENDMENT EQUAL PROTECTION rights by failing to protect his from harassment, intimidation and sexual assault as Plaintiff was left alone and unprotected when he had actual notice of prior harassment via the Senior Rule and the 'keying' practice.

76. Defendant Smith acting or purporting to act under color of state law, intentionally and purposefully discriminated against Plaintiff depriving his of the rights guaranteed his by the EQUAL PROTECTION rights found in the FOURTEENTH AMENDMENT to the U.S. CONSTITUTION, and his rights under 42 U.S.C. § 1983.

77. Defendant Smith's actions violated Plaintiff's clearly-established legal rights and were performed with malice and/or done with reckless disregard to the Plaintiff's federally-protected civil rights.

78. As a proximate consequence thereof, Plaintiff has been damaged as he has been caused to suffer physical injury, severe emotional distress, embarrassment, humiliation, anxiety, and concern

79. Plaintiff is entitled to an award of compensatory and punitive damages against Defendant Smith in his individual capacities; that Defendant Smith actions were willful, wanton, and/or reckless or otherwise improper and egregious to a degree that it would require or otherwise substantiate the allowance of actual compensatory and punitive damages in an amount to be determined by the jury against Defendants.

### Count III – 42 U.S.C. § 1983
### [Violation of Amendments to the U.S. CONSTITUTION]
### (Defendant James Blanchard)

80. Paragraphs 1 through 63 are incorporated herein as if set out in full.

81. Defendant Blanchard, individually and with final decision-making authority on behalf of the Piedmont City School District, violated Plaintiff's rights under 42 U.S.C. §1983 and his Fourteenth Amendment Equal Protection rights by failing to protect him from harassment, intimidation and sexual assault as Plaintiff was left alone and unprotected when he had actual notice of prior harassment via the Senior Rule and the 'keying' practice.

82. Defendant Smith acting or purporting to act under color of state law, intentionally and purposefully discriminated against Plaintiff and acted with deliberate indifference when he heard students talking about the rape of the Plaintiff, and did nothing about it or to prevent future bullying, harassment, or sexual assault, depriving him of the rights guaranteed his by the EQUAL PROTECTION clause found in the FOURTEENTH AMENDMENT to the U.S. CONSTITUTION, and his rights under 42 U.S.C. § 1983.

83. Defendant Blanchard's actions violated Plaintiff's clearly-established legal rights

and were performed with malice and/or done with reckless disregard to the Plaintiff's federally-protected civil rights.

84. As a proximate consequence thereof, Plaintiff has been damaged as he has been caused to suffer physical injury, severe emotional distress, embarrassment, humiliation, anxiety, and concern

85. Plaintiff is entitled to an award of compensatory and punitive damages against Defendant Blanchard in his individual capacity; Defendant Blanchard's actions were willful, wanton, deliberately indifferent, and/or reckless or otherwise improper and egregious to a degree that it would require or otherwise substantiate the allowance of actual compensatory and punitive damages in an amount to be determined by the jury against Defendants.

### Count IV – Negligence
### (Defendants Smith and Blanchard)

86. Paragraphs 1 through 63 are incorporated herein as if set out in full.

87. Standing in loco parentis, Defendants Smith and Blanchard owed a duty to all students at Piedmont High School, including Plaintiff Doe., to act in a reasonably prudent manner when executing their duties as an employee of Piedmont High School to supervise, discipline, suspend and expel students who pose a real and immediate danger to their fellow students and to protect its students from harassment, intimidation and sexual assault.

88. Defendants Smith and Blanchard negligently breached their duties to Doe by failing to supervise, discipline, suspend and/or expel Student Defendants despite their knowledge of their habit and practice of continuously and repeatedly harassing and threatening to sexually assault Plaintiff.

89. Defendants negligently breached their duties to Doe by refusing to comply with

federal law and keeping in place a proper policy regarding sexual harassment by students at school and failing to properly implement the policy when specifically notified that sexual harassment was taking place.

90. Defendant Blanchard negligently breached his duty to Defendant Doe by failing to comply with the School's clear rule that, if he becomes aware of sexual harassment, he should report that conduct to the school principal when he became aware of the sexual assault of Doe and did not report that to the school principal.

91. As a direct and proximate result of the negligence of the Defendants Smith and Blanchard, Plaintiff Doe was sexually harassed and assaulted which caused his personal injury and severe emotional distress.

### Count V –Recklessness/Wantonness
### (Defendants Smith and Blanchard)

92. Paragraphs 1 through 63 are incorporated herein as if set out in full.

93. Standing in loco parentis, Defendants Smith and Blanchard owed a duty to all students at Piedmont High School, including Plaintiff Doe, to act in a reasonably prudent manner when executing his duties as employees of Piedmont High School to supervise, discipline, suspend and expel students who pose a real and immediate danger to their fellow students and to protect its students from harassment, intimidation and sexual assault.

94. Defendants Smith and Blanchard recklessly and/or wantonly breached their duty to Doe by failing to properly supervise, discipline, suspend and/or expel Student Defendants despite their knowledge of Student Defendant's continuous habit and practice of continuously and repeatedly harassing Plaintiff Doe and others.

95. Defendant Blanchard recklessly and/or wantonly breached his duty to Defendant Doe by failing to comply with the School's clear rule that, if he becomes aware of sexual

harassment, he should report that conduct to the school principal when he became aware of the sexual assault of Doe and did not report that to the school principal.

96. As a direct and proximate result of the recklessness and/or wantonness of Defendant Smith, Plaintiff John Doe was sexually harassed and assaulted which caused his personal injury and severe emotional distress.

### Count VI – Negligence
### (Student Defendants)

97. Paragraphs 1 through 63 are incorporated herein as if set out in full

98. Student Defendants owed a duty to Plaintiff Doe to act in a with regard to actions which would cause harm.

99. Student Defendants negligently breached this duty to Doe by sexually assaulting Plaintiff thereby causing him harm.

100. Defendants may have taken these actions under the mistaken belief that they were welcome by Plaintiff, were expected of them as upper classmen, or were in keeping with Defendant Smith's desire for the direction of his football team.

101. As a direct and proximate result of the negligence of the Defendant Smith, Plaintiff Doe was sexually harassed and assaulted which caused his personal injury and severe emotional distress. However, this damage may have been an unintentional consequence of Student Defendants' negligent conduct.

### Count VII – Recklessness/Wantonness
### (Student Defendants)

102. Paragraphs 1 through 63 are incorporated herein as if set out in full.

103. Student Defendants owed a duty to Plaintiff Doe to act in a with regard to actions which would cause harm.

104. Student Defendants recklessly and/or wantonly breached this duty to Doe by sexually assaulting Plaintiff thereby causing him harm.

105. Defendants may have taken these actions under the reckless belief that they were welcome by Plaintiff, were expected of them as upper classmen, or were in keeping with Defendant Smith's desire for the direction of his football team.

106. As a direct and proximate result of the recklessness and/or wantonness of the Defendant Smith, Plaintiff Doe was sexually harassed and assaulted which caused his personal injury and severe emotional distress. However, this damage may have been an unintentional consequence of Student Defendants' reckless conduct

### Count VIII – Tort of Outrage
### [a.k.a. Intentional/Reckless Infliction of Emotional Distress]
### (Student Defendants)

107. Paragraphs 1 through 63 are incorporated herein as if set out in full.

108. As alleged *supra*, Student Defendants' conduct was intentional and/or reckless, extreme and outrageous and utterly intolerable in a civilized society.

109. As a direct result of Student Defendants' conduct, Plaintiff John Doe was sexually and assaulted which caused him personal injury and severe emotional distress.

### Count IX – Assault
### (Student Defendants)

110. Paragraphs 1 through 63 are incorporated herein as if set out in full.

111. Student Defendants assaulted Plaintiff by causing offensive and unwanted contact to Plaintiff's person and thereby committed a "trespass to person" as the phrase is used in ALA. CODE § 6-2-34(1).

112. As a direct result of Student Defendants' conduct, Plaintiff John Doe was sexually and assaulted which caused him personal injury and severe emotional distress.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff John Doe requests this Court enter an Order which will:

a. Declare the conduct engaged in by the Defendants to be in violation of Plaintiff John Doe's rights and Alabama law;

b. Enter appropriate declaratory and injunctive relief;

c. Award Plaintiff John Doe compensatory damages against the Defendants, in an amount that will fully compensate him for the physical injuries, mental distress, anguish, pain, humiliation, embarrassment, suffering and concern that he has suffered as a direct and/or proximate result of the statutory and common law violations as set out herein;

d. Enter a judgment against all Defendants, for such punitive damages as will properly punish them for the constitutional, statutory and common law violations perpetrated upon Plaintiff as alleged herein, in an amount that will serve as a deterrent to Defendants and others from engaging in similar conduct in the future;

e. Award Plaintiff John Doe prejudgment and post-judgment interest at the highest rates allowed by law;

f. Award Plaintiff John Doe costs, expert witness fees, and reasonable attorney's fees;

g. Assume continuing and indefinite jurisdiction to insure compliance with the terms of the Orders requested herein;

h. Award Plaintiff John Doe such other and further relief, including equitable, that this Court deems just and proper.

**JURY DEMAND**

Plaintiff demands trial by struck jury.

s/ Eric J. Artrip
Eric J. Artrip

Submitted this the 1ˢᵗ day of December, 2020.

          s/ Eric J. Artrip
          Teri Ryder Mastando (ASB-3137-T64J)
          Eric J. Artrip (ASB-4507E53T)
          MASTANDO & ARTRIP, LLC
          301 Washington Street, NW Suite 302
          Huntsville, Alabama 35801
          Telephone:   (256) 532-2222
          Facsimile:    (256) 513-7489

**DEFENDANTS TO BE SERVED VIA CERTIFIED MAIL AT:**

**Bryson Ingram**
**206 Meadowbrook Drive**
**Piedmont, Alabama 36272**

**James Blanchard**
**511 Mary St.**
**Centre, Al 35960**

**J.C.**
REDACTED
REDACTED

**B.F.**
REDACTED
REDACTED

**Steve Smith**
**247 Woodridge Dr**
**Piedmont, AL 36272**

**Piedmont City School District**
**502 Hood Street West**
**Piedmont, AL 36272**